UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : <br> : <br> v. : <br> : <br> WILLIAM H. ASHLEY, : <br> : <br> Defendant : <br> : | Cr. No. 08-30 <br><br> Violations: <br> 18 U.S.C. § 1343 (Wire Fraud) <br><br> **FILED** <br> MAY 1 5 2008 <br> NANCY MAYER WHITTINGTON, CLERK <br> U.S. DISTRICT COURT |

### STATEMENT OF OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant WILLIAM H. ASHLEY ("ASHLEY") agrees and stipulates as follows:

1. ASHLEY lives in Clinton, Maryland. ASHLEY was a sales associate at the Washington, D.C. branch of J. Press, a clothing store at 1801 L Street, NW, Washington, D.C. ASHLEY worked at J. Press from on or about November 1, 1988, until on or about October 18, 2006 and had keys to the store and knowledge of the store's security codes. ASHLEY had a American Express credit card. ASHLEY also had a Visa debit card that was linked to his checking account at M&T Bank.

2. J. Press sells high-end men's clothing and accessories and has additional stores in New Haven, Connecticut; Boston, Massachusetts; and New York, New York. J. Press customers may purchase items with the usual assortment of financial instruments, including cash, checks, and credit cards.

3.  J. Press has a credit card processing contract with New Alliance Bank, a Connecticut bank. New Alliance Bank in turn contracted with First Data Corporation to provide the actual credit card processing services to merchants like J. Press.

4.  When a J. Press customer presents a credit card to pay for store items, the customer's credit card generally is swiped into a credit card processing terminal, or the credit card number is entered into the computer system. Before the transaction is approved, electronic data typically is sent by wire from the Washington, D.C. store across state lines to First Data Corporation or one of its contractors.

5.  At the end of each business day, J. Press sends by wire the entire batch of credit card charges for that particular day to First Data.

6.  For Mastercard and Visa credit card purchases or credits, First Data accesses the Mastercard/Visa electronic network and transmits data electronically over the wires to the banks from which the cardholders' receive their Mastercard or Visa credit card. To give J. Press credit for the charges made at its store, First Data sends by credit an Automated Clearing House transaction over the wires to J. Press's checking account at the Bank of Tokyo, in New York, New York.

7.  For American Express purchases, First Data processes the initial charge information and then sends data regarding American Express transactions to American Express facilities in Phoenix, Arizona. From there, American Express sends credits to merchants at the merchant's bank account. For J. Press charges, American Express wires credits from Phoenix, Arizona to J. Press's bank account at the Bank of Tokyo, in New York, New York.

8. It was ASHLEY's scheme and intent to use his knowledge of J. Press's computer credit-card processing system to embezzle hundreds of thousands of dollars from J. Press. Throughout the course of his scheme, and to effect his goal of embezzling corporate funds for his personal use, ASHLEY gave himself refunds or credits on his Visa debit card for purchases he had not made, and he took active steps to hide his scheme from J. Press. Thus, ASHLEY put over $300,000 in charges on his American Express card to hide over $500,000 in credits he was giving himself on his Visa card. To accomplish his scheme, ASHLEY sent credit card information over interstate wires, often several times a day. In this way, he was able to embezzle over $200,000 from his employer.

9. From in or about January 2000 through in or about October 2006, in the District of Columbia, ASHLEY, a sales associate of J. Press, having devised a scheme or artifice to defraud J. Press, and to obtain money or property by means of false or fraudulent pretenses, representations, or promises from J. Press, transmitted or caused to be transmitted by means of wire, radio, or television communications in interstate commerce writings, signs, signals, pictures, or sounds for the purpose of executing his scheme or artifice to defraud.

10. Thus, for example, in February 2006, Ashley (1) made the following charges to his American Express card, and (2) gave himself the following credits to his Visa debit card, on the following dates:

| Date | Visa Credits | Amex Charges |
|---|---|---|
| February 1, 2006 | | $452.75 |
| February 2, 2006 | $630.00 and $602.75 | |
| February 3, 2006 | | $363.25 |
| February 4, 2006 | | $$898.75 |
| February 6, 2006 | $898.75 and $363.25 | |
| February 13, 2006 | $440.18 | $261.20 |
| February 14, 2006 | $352.94 and $261.20 | $194.32 |
| February 16, 2006 | | $691.61 |
| February 17, 2006 | $1,790.15 | $884.33 |
| February 18, 2006 | | $350.56 |
| February 21, 2006 | $884.33 and $350.56 | $299.27 and $445.25 |
| February 22, 2006 | $445.25 and $299.27 | $71.38 |
| February 23, 2006 | $1,723.32 | |
| February 25, 2006 | | $432.71 |
| February 27, 2006 | $432.71 and $197.50 | |
| February 28, 2006 | $1,745.25 | $164.97 |

    11.    As a result, for the month of February 2006 alone, ASHLEY credited his Visa debit card $11,417.41 from J. Press; and, to hide his scheme from his employer, he charged $6,173.35 in J. Press charges on his American Express charge card. In doing so, he was able to embezzle $5,244.06 from J. Press in February 2006 alone. Moreover, each one of the transactions listed above involved interstate wire transmissions of data and information.

12.	Ashley perpetuated his scheme to defraud J. Press for more than six years; and, as a result, he was able to embezzle more than $200,000 from his employer by and through his use of the wires.

### DEFENDANT'S ACCEPTANCE

I have read every word of this five-page Statement of Offense. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and after consulting with my attorney, I agree and stipulate to this Statement of Offense.

Date: 2/4/08

William H. Ashley
Defendant

I have discussed this Statement of Offense with my client, Mr. Ashley. I concur with his decision to stipulate to this Statement of Offense.

Date: 2/4/08

Shraga Kawior, Esquire
Counsel for the defendant